# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JESSICA STALFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 12-4011-JWL** |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying Social Security disability benefits (SSD) and

Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A)

of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)

(hereinafter the Act). Finding no error in the Commissioner's final decision, the court

ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C.

§ 405(g) AFFIRMING that decision.

## I.      Background

_____

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of
Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the
defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action
is necessary.

Plaintiff applied for SSD and SSI on March 26, 2008, alleging disability beginning July 15, 2005.[2] (R. 12, 149-58). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 12, 65-68, 103-05). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Linda L. Sybrant on June 17, 2010. (R. 12, 29). At the hearing, testimony was taken from Plaintiff, from Plaintiff's mother, and from a vocational expert. (R. 12, 29-64).

On July 29, 2010,[3] ALJ Sybrant issued her decision finding that Plaintiff has the residual functional capacity (RFC) for a range of light work with certain postural, manipulative, communicative, and environmental limitations, and that although Plaintiff has no past relevant work, there are a significant number of jobs within the economy that she is able to perform. (R. 12-22). Consequently, the ALJ determined Plaintiff is not disabled within the meaning of the Act, and denied her applications. (R. 22).

Plaintiff sought Appeals Council review of the ALJ's decision and submitted a Representative Brief which the Council made a part of the administrative record in this case. (R. 4, 6-8, 301-02). The Appeals Council found that the Representative Brief did

---

[2]The Commissioner's decision indicates Plaintiff's SSD application was made on March 25, 2008, and that Plaintiff alleged disability beginning July 16, 2005. (R. 12). However, both applications indicate that Plaintiff applied on March 26, 2008, and that Plaintiff alleged disability beginning July 15, 2005. (R. 149, 157).

[3]Because the Commissioner's decision in this case was issued on July 29, 2010, all citations to the Code of Federal Regulations in this opinion refer to the 2010 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2010, unless otherwise indicated.

not provide a basis to change the ALJ's decision, found no reason under Social Security Administration rules to review the decision, and denied Plaintiff's request for review.  (R. 1-5).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v.

Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's RFC.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erroneously weighed the medical opinions, both of her treating physician, Dr. Veloor, and of the state agency medical consultants.  (Pl. Brief 19-23).  Plaintiff also claims the ALJ failed to apply the correct legal standard to evaluate the credibility of Plaintiff's allegations of symptoms resulting from her impairments.  (Pl.

Brief 23-31).  Finally, Plaintiff claims that the ALJ erred in her RFC assessment as a result of her errors in evaluating the credibility of Plaintiff's allegations of symptoms and as a result of her errors in weighing the medical opinion of Dr. Veloor.  Id. at 31-32.  The Commissioner argues that the ALJ properly evaluated the medical opinion evidence and properly evaluated the credibility of Plaintiff's allegations of symptoms as required by the holding of Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987), and in accordance with 20 C.F.R. §§ 404.1529, 416.929, and Social Security Rulings (SSR) 96-4p and 96-7p.  (Comm'r Br. 11-18).  The Commissioner argues that because the ALJ did not err as alleged by Plaintiff, her RFC assessment was supported by substantial record evidence and was not erroneous.  Id. at 18-19.  The court finds no error in the ALJ's decision.  It addresses each of the issues presented in the order suggested by Plaintiff's Brief.

## III.    Evaluation of the Medical Opinions

Plaintiff claims the ALJ erred in weighing Dr. Veloor's medical opinion because she failed to accord the opinion controlling weight, failed to state the precise weight she accorded the opinion, and did not properly apply the regulatory factors in weighing the opinion.  (Pl. Brief 21).  Plaintiff also claims that the ALJ erred in weighing the opinions of the state agency physicians by merely stating that her RFC trumped that of the state agency physicians.  (Pl. Brief 22).  The Commissioner argues that the ALJ properly discounted Dr. Veloor's opinion.  (Comm'r Br. 12).

### A.    Standard for Evaluating Treating Source Medical Opinions

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is [(1)] well-supported by medically acceptable clinical and laboratory diagnostic techniques and is [(2)] not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2012) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must also confirm that the opinion is "not inconsistent" with other "substantial evidence" in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

SSR 96-2p, cited by the court in Watkins, explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Richardson v. Perales, 402 U.S. 389 (1971). SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2010). The threshold for denying controlling weight is low. Inconsistent evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a

conclusion that is contrary to the conclusion expressed in the [treating source's] medical opinion."  Id.

If a treating source opinion is not given controlling weight, the inquiry does not end.  Watkins, 350 F.3d at 1300.  Such an opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id. Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  Watkins, 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

**B.**     **Dr. Veloor's Opinion**

Here, the ALJ considered Dr. Veloor's treatment of Plaintiff:

Since March 2010, the claimant was followed by Sushmita Veloor, M.D., for management of her chronic pain. Dr. Veloor's impression included chronic neck pain and bilateral upper extremity pain secondary to cervical degenerative disc disease and bilateral cervical radiculitis; cervicogenic headaches; and low back pain with underlying lumbar degenerative disc disease and mild facet arthropathy. He opined her neck pain was her worse problem and was most likely due to underlying cervical degenerative disc disease. He referred her for an EMG, which showed only mild neuropathy at both wrists and no cubital tunnel syndrome (Exhibits 35F, 36F [(R. 624-40)]). While these studies clearly indicate the claimant has a significant impairment in her cervical and lumbar spines, which could reasonably cause pain with exertional movements such as standing, walking, lifting, carrying, bending, and stooping, there is no evidence that she is totally disabled. Her arm pain is substantiated to some extent by the evaluation of mild bilateral carpal tunnel syndrome. However, there is no evidence that leads the undersigned to conclude that this claimant is unable to engage in work activity due to mild carpal tunnel syndrome or the abnormalities noted on objective studies cited.

(R. 18). Later, she discussed Dr. Veloor's opinion and the weight accorded to it:

As for the opinion evidence, her treating pain specialist, Dr. Veloor, opined the claimant was quite limited in her ability to perform the physical demands of work activity, that she needed to lie down and would be absent from work more than three times a month (Exhibit 32F [(R. 611-14)]). Even though this opinion source is a treating physician, such opinion is not accorded controlling weight as it is not consistent with other evidence of record (Social Security Ruling (SSR) 96-2p). Dr. Veloor did not provide explanations for the limitations on walking and standing only 5 hours of an 8 hour workday, for the need to lie down for 3 to 4 hours a day, or for missing work. His opinion appears to be based on the claimant's subjective complaints and not objective or clinical evidence obtained during his treatment.

(R. 20).

From this discussion, it is clear that the ALJ denied controlling weight to Dr.

Veloor's opinion because it is "not consistent with other record evidence." (R. 20). As

the Commissioner points out in her brief, Plaintiff told Dr. Spratt that she walked one to

two miles at a time, three times a week (R. 503, 543); Dr. Ryan, on a neurologic consultation, saw no evidence of central or peripheral nervous system disease (R. 442-43); Dr. Javaid found normal muscle strength and reflexes, and negative straight leg raising (R. 557); and Dr. Lowry found an essentially normal physical examination. (R. 566-67). Moreover, the state agency non-examining medical consultants opined that Plaintiff's mental impairments are not severe (R. 392, 541) and that she is able to perform a range of light work. (R. 539-40) (affirming as written the July 31, 2008 Physical RFC assessment form completed by a Single Decisionmaker); see also (R. 238-45); (R. 406-07) (Medical Consultant's Review, agreeing with Single Decisionmaker's Physical RFC Assessment). Because at least the state agency consultants' opinions are not consistent with Dr. Veloor's opinion, and are "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in [Dr. Veloor's] medical opinion," then substantial record evidence supports the ALJ's determination not to give controlling weight to Dr. Veloor's opinion. The court finds no error in the ALJ's determination not to give controlling weight to Dr. Veloor's opinion.

Plaintiff next argues that the ALJ "erred by failing to state the weight she provided Dr. Veloor'[s]" opinion. (Pl. Br. 21). The court does not agree. As Plaintiff argues, an "ALJ's decision must be 'sufficiently articulated so that it is capable of meaningful review.' " (Pl. Brief 21) (quoting Spicer v. Barnhart, 64 F. App'x 173, 177-78 (10th Cir. 2003)). The court recognizes that an ALJ must provide reasons in the decision for the weight she accords a medical opinion, and if she rejects a treating source opinion, she

must provide "specific, legitimate reasons" for doing so. <u>Watkins</u>, 350 F.3d at 1301.

ALJ's frequently describe the weight accorded to medical opinions by using such terms as "little weight," "substantial weight," "no weight," "some weight," "significant weight," or "controlling weight." Other than the requirement that an ALJ must consider whether the opinion of a treating source is worthy of controlling weight, and must indicate as much in her decision, the court is aware of no authority which requires that an ALJ use particular terms to specify the weight accorded to medical opinions. What is required is that she provide reasons for the weight accorded and that her decision be capable of meaningful judicial review.

While it would have been helpful if the ALJ had specifically stated that she rejected or accorded no weight to Dr. Veloor's opinion, that omission is not error requiring remand, because in context the decision makes clear that she provided no weight to the opinion; she provided specific, legitimate reasons for doing so; and that determination is capable of meaningful judicial review. As the portion of the decision quoted above makes clear, the ALJ determined first that Dr. Veloor's opinion is not consistent with the other record evidence and that consequently it would not be accorded controlling weight. (R. 20). She then explained her further reasons for discounting the opinion. First, she found Dr. Veloor provided no explanation for his determinations that Plaintiff could sit, stand, and walk for a total of only 5 hours in a workday; that Plaintiff needed to lie down 3 to 4 hours in a workday; or that Plaintiff's impairments cause her to miss work more than 3 times a month. (R. 20).

This finding is supported by the record. Dr. Veloor provided no explanation for the limitations assessed. His opinion consists primarily of bare conclusions, with no rationale or explanation provided to connect the limitations with Plaintiff's conditions. Moreover, the form completed by Dr. Veloor instructed him to "[i]dentify the particular medical findings . . . which support your opinion regarding limitations," and cautioned in bold, all-capital letters that "it is important that you relate particular medical findings to any reduction in capacity; the usefulness of your opinion depends on the extent to which you do this." (R. 611) (bolding and all caps omitted by the court). Dr. Veloor's lack of explanation is rendered more significant by the fact that the form explained what was necessary, and highlighted the importance of that information, yet Dr. Veloor's opinion was not responsive to the instructions or to the needs of the SSA.

The ALJ next explained that Dr. Veloor's opinion was rejected because it "appears to be based on the claimant's subjective complaints and [was] not [based on] objective or clinical evidence obtained during [Dr. Veloor's] treatment." (R. 20). Once again, the record evidence supports this finding. As the ALJ noted in summarizing Dr. Veloor's treatment notes (and as quoted above), Plaintiff was treated by Dr. Veloor "[s]ince March 2010," id. at 18 (citing Exs. 35F, 36F (R. 624-28, 633-37) (on March 25, and May 6, 2010) (the ALJ's hearing was held on June 17, and the decision issued on July 29)), and Dr. Veloor referred Plaintiff for an EMG, which revealed only mild neuropathy in both wrists and no cubital tunnel syndrome. (R. 18) (R. 631, 640). Dr. Veloor's treatment notes reveal significant complaints of symptoms reported by Plaintiff, but those

significant limitations are not reflected in the clinical and laboratory findings or analyses recorded in the treatment notes. (R. 624-40). The ALJ recognized that the treatment notes reveal "significant impairment in [Plaintiff's] cervical and lumbar spines, which could reasonably cause pain with exertional movement," and that "her arm pain is substantiated to some extent by the evaluation of mild bilateral carpal tunnel syndrome." (R. 18). However, the ALJ also noted no evidence of total disability in those treatment notes, and no evidence that would lead her "to conclude that this claimant is unable to engage in work activity due to mild carpal tunnel syndrome or [due to] the abnormalities noted on objective studies cited." Id. Having recognized these facts, the only basis remaining in the treatment notes which suggest the severe limitations opined by Dr. Veloor is Plaintiff's reports of disabling symptoms. In such circumstances, the ALJ properly discounted Dr. Veloor's opinion because it is based upon Plaintiff's allegations rather than upon the clinical and laboratory findings reflected in the treatment notes.

Plaintiff is correct to caution that a "reviewing court may not create post-hoc rationalizations to explain the [ALJ's] treatment of evidence when that treatment is not apparent from the [ALJ's] decision." (Pl. Brief 21) (citing Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). But, although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quoting, respectively, SEC v. Chenery Corp., 332 U.S. 194, 196 (1947); and Bowman

Transp. Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)).  Here the ALJ's

treatment of the evidence cited is apparent from her discussion in the decision.  The court

has not created a post-hoc rationalization for the decision, but has merely pointed to

record evidence which supports the ALJ's rationale in this regard.

In her Reply Brief, Plaintiff asserts that an ALJ's decision must be evaluated

"based solely on the reasons and evidence stated in the ALJ's decision."  (Reply 2)

(emphasis added) (citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156,

168-69 (1962)).  However, neither Burlington Truck Lines, nor the other cases controlling

on this issue suggest that an agency's decision must be supported only by evidence cited

in the agency decision.  Rather, they require that a decision be evaluated based upon the

rationale, bases, grounds, explanations, or reasons relied upon by the agency.  Burlington

Truck Lines, 371 U.S. at 169 ("on the same basis articulated in the order by the agency");

Chenery Corp., 332 U.S. at 196 ("solely by the grounds invoked by the agency"); Haga v.

Astrue, 482 F.3d 1205, 1207 (10th Cir. 2007) ("ALJ did not provide these explanations");

Robinson v. Barnhart, 366 F.3d 1078, 1084-85 (10th Cir. 2004) ("decision should have

been evaluated based solely on the reasons stated in the decision"); Allen v. Barnhart, 357

F.3d 1140, 1142 (10th Cir. 2004) (court relied "upon certain analytical revisions offered

on judicial review," and the "ALJ's decision cannot stand on its own erroneous

rationale"); Ramirez v. Barnhart, No. Civ. A. 02-2261-KHV, 2003 WL 21105082, *6 (D.

Kan. April 4, 2003) (citing Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000)

("decision must stand or fall with reasons set forth in decision")).

Therefore, in evaluating an ALJ's decision, the court must first determine the ALJ's rationale, bases, grounds, explanations, or reasons for the finding at issue, and then determine whether substantial record evidence supports that finding and the rationale relied upon. If the Commissioner points to record evidence which was considered by the ALJ and which supports the ALJ's rationale, the court may consider and rely on that evidence, even if it was not cited in the decision at issue. After all, the primary question the court must answer in judicial review of a decision of the Commissioner is whether substantial record evidence supports the decision. Lax, 489 F.3d at 1084; accord, White, 287 F.3d at 905; see also 42 U.S.C. § 405(g) ("The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."). Nevertheless, if the Commissioner points to record evidence (even evidence which was cited by the ALJ), and attempts to provide an alternative rationale in support of the ALJ's finding, the alternative rationale is merely post-hoc rationalization which may not be relied upon by the court to affirm the decision. Moreover, the court itself may not provide an alternative basis to affirm the Commissioner's decision. Grogan, 399 F.3d at 1263. It has not done so here.

Finally, Plaintiff argues that the ALJ "did not follow the regulatory factors" in weighing Dr. Veloor's opinion. (Pl. Brief 21). However, she does not point to particular factors which were ignored by the ALJ or the consideration of which would require a different result in weighing Dr. Veloor's opinion. As noted above, the regulatory factors for weighing medical opinions are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the

15

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6).  Although these factors are to be considered in weighing medical opinions, the courts will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).  That standard has been met here.  Moreover, the court's discussion above reveals that the ALJ's consideration included at least the first four factors listed.

### C.  State Agency Physicians' Opinions

Plaintiff argues that an ALJ is required to explain the weight assigned to state agency physicians' opinions, and that the ALJ erred by merely stating that her RFC trumped that of the state agency physicians, and by failing to state the specific weight accorded to the state agency physicians' opinions in this case.  The Commissioner did not address this issue.

As Plaintiff's argument suggests, the ALJ discussed the opinions of the state agency non-examining medical consultants. (R. 20) (citing Exs. 10E,[4] 12F, 13F, 14F (R. 238-45, 392-410)). She stated the regulatory requirement to evaluate the opinions of state agency consultants as medical opinions which are to be considered and weighed along with the other medical opinions. (R. 20). She noted that the RFC she had assessed was somewhat different from that assessed by the state agency consultants. Id. She then explained that her RFC assessment was based upon all of the evidence in the case record and included consideration of "evidence which was not available to [the] State agency medical consultants." (R. 21).

Although it would have been helpful if the ALJ had specified the particular weight which she accorded to the consultants' opinions, as discussed above an ALJ is not required to use particular terms to specify the weight accorded to medical opinions. What is required is that she provide reasons for the weight accorded those opinions and that her determination be capable of meaningful judicial review. The dispositive question then, in determining whether the ALJ in this case properly weighed the medical consultants'

_____

[4]Exhibit 10E is a "Physical Residual Functional Capacity Assessment" Form completed by a Single Decisionmaker at the initial consideration of Plaintiff's applications. (R. 238-45). As such it is not a medical opinion and is worthy of no weight in its own right in the ALJ's consideration. E.g., Kempel v. Astrue, No. 08-4130-JAR, 2010 WL 58910, *7 (D. Kan. Jan. 4, 2010) (citing cases considering Single Decisionmaker opinions). However, the Single Decisionmaker's RFC assessment was "agreed with" by Dr. Tella in Exhibit 13F (R. 406-07), and "affirmed, as written" by Dr. Vopat in Exhibit 21F. (539-40). Thus, Exhibit 10E became the medical opinion of Dr. Tella and of Dr. Vopat, and was appropriately considered and weighed by the ALJ.

opinions is whether the evidence which became a part of the record after the consultants formulated their medical opinions supports the differences between the ALJ's RFC assessment and the RFC assessment of the medical consultants. In order to make that determination, the court must first determine the extent of those differences.

With regard to mental limitations, the ALJ's RFC assessment is no different than that of the state agency consultants. Compare (R. 15) (ALJ's finding that Plaintiff has no severe mental impairment) with (R. 392) (state agency consultant's Psychiatric Review Technique Form finding "Impairments Not Severe"). The ALJ recognized that after the state agency consultants found that Plaintiff had no severe mental impairments in July 2008, Plaintiff began, but did not follow through with, mental health treatment. (R. 15) (citing Ex. 16F (R. 427-41)). She noted that Plaintiff testified that she continued to see a social worker, but that she had provided no records of that alleged treatment. (R. 15). She found that Plaintiff does not have a severe mental impairment. Id. This determination is supported by the record evidence including the consultants' opinions.

The ALJ found that Plaintiff is able to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and that finding is identical to many of the exertional limitations opined by the state agency consultants. (R. 239) (see n.4 above). Although the state agency consultants found Plaintiff capable of unlimited pushing and pulling at the light exertional level, the ALJ found that she was limited to only occasional pushing and pulling at the light level. (R. 16, 239). While the state agency consultants found no limitation on Plaintiff's ability to stoop, crouch, crawl, kneel, or climb (other

than ladders, ropes, and scaffolds), the ALJ found she was limited to performing these activities only <u>occasionally</u>.  (R. 16, 240).  The consultants found Plaintiff was unlimited in reaching, whereas the ALJ found she could only perform <u>occasional</u> overhead reaching.  (R. 16, 241).  The consultants found no communicative limitations, but the ALJ determined Plaintiff must <u>avoid constant voice communication</u> due to hoarseness.  (R. 16, 242).  The consultants found Plaintiff must avoid even moderate exposure to hazards, but the ALJ found she must avoid only <u>concentrated exposure to hazards</u>.  (R. 16, 242).  In all other respects the limitations opined by the state agency consultants are identical to the limitations assessed by the ALJ.  <u>Compare</u>, (R. 16) <u>with</u> (R. 238-45).  In discussing Plaintiff's capabilities in these areas, the ALJ noted that Plaintiff testified she was no longer under treatment for seizure activity (R. 15); that Plaintiff has significant impairments in her cervical and lumbar spine which would limit exertional movement such as standing, walking, lifting, carrying, bending, and stooping (R. 18); that the evidence shows limitations in the "ability to bend, stoop, lift, and/or carry because of neck and back pain;" that the restrictions the ALJ assessed due to postural and hazard limitations "are based on the evidence of neck and back impairments and obesity;" and that Plaintiff "should not be required to use her voice as a primary function of her job." (R. 20).  Contrary to Plaintiff's argument, the decision, when read as a whole, reveals that the ALJ explained her reasons for the differences between her RFC assessment and the limitations opined by the medical consultants.

Moreover, with one exception, each difference between the medical consultants' opinion and the RFC assessed by the ALJ works to the benefit of Plaintiff. The ALJ found that Plaintiff was <u>more limited</u> in pushing and pulling, in stooping, crouching, crawling, kneeling, or climbing, in overhead reaching, and in voice communication than did the medical consultants. Plaintiff was not prejudiced by the ALJ's decision to find greater limitations, and therefore, she cannot be heard to complain, because giving greater weight to the consultant's opinions would not have helped her. <u>Keyes-Zachary v. Astrue</u>, 695 F.3d 1156, 1162-63, and n.2 (10th Cir. 2012) (citing <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[W]e are aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably [toward the claimant] unless the ALJ provides an explanation for extending the claimant such a benefit.") (brackets added in <u>Keyes-Zachary</u>)).

The one exception which works a detriment to Plaintiff is the ALJ's determination that Plaintiff is able to withstand <u>moderate</u> but not <u>concentrated</u> exposure to hazards. The Physical RFC form expressing the medical consultants' opinion explained that the limitation to avoid even moderate exposure to hazards was because of a history of seizure disorder. (R. 242); <u>see also</u> n.4 above. However, the ALJ explained that at the hearing Plaintiff testified she was no longer under treatment for seizure activity. (R. 15). This is a fact of which the medical consultants were unaware, and as the ALJ noted in her decision, that fact justifies the difference in limitations. (R. 20-21). Plaintiff does not argue that the record does not support this finding. Moreover, the ALJ explained that she

required Plaintiff to avoid concentrated exposure to hazards because of neck and back impairments and obesity, but in doing so she did not include Plaintiff's history of seizure disorder. (R. 20).

The ALJ stated that her RFC assessment was different from that of the state agency medical consultants because of record evidence and testimony which was not available to the state agency consultants. The record supports that finding. Plaintiff has shown no error in the ALJ's evaluation of the opinions of the state agency consultants.

## IV.    Credibility Determination

In her next allegation of error, Plaintiff claims the ALJ failed "to apply appropriate legal standards when evaluating Plaintiff's subjective complaints." (Pl. Brief. 23). In her brief, she lays out the three-step framework for evaluating the credibility of a claimant's allegations of pain, as formulated by the Tenth Circuit in <u>Luna</u>, 834 F.2d 161, and argues that the evidence shows Plaintiff has met the requirements of the first two steps of that framework. (Pl. Brief 23-25). She claims that the ALJ was therefore required to apply the third step of the framework and consider all of the evidence, both subjective and objective, in determining whether her pain is in fact disabling. <u>Id.</u> at 25. She sets out six factors which the Tenth Circuit provided in <u>Luna</u> and in <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995) which "are to be considered" in making the step-three determination. (Pl. Brief 25). She then claims that "[i]nstead of examining relevant factors, the ALJ focused on other factors," and adopted the very position criticized in <u>Luna</u>, by relying on the alleged absence of medical support for Plaintiff's alleged level of pain. <u>Id.</u> Finally,

she sets out her "analysis of the relevant factors" as sanctioned in <u>Luna</u> and <u>Kepler</u>, <u>id.</u>, and argues that had the ALJ properly analyzed those factors she would have found plaintiff's allegation of disabling pain to be credible. <u>Id.</u> at 26-31.

The Commissioner argues that the ALJ properly applied the <u>Luna</u> standard, and points out that the regulations provide factors for consideration in addition to the case law factors when assessing the credibility of a claimant's allegations of symptoms resulting from her impairments. (Comm'r Br. 15) (citing 20 C.F.R. §§ 404.1529, 416.929).[5] He argues that substantial record evidence supports the ALJ's credibility finding, and that the finding should be affirmed. <u>Id.</u> at 16-18.

## A. Standard for Evaluating Credibility

As Plaintiff explains in her Brief, the Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987). We

---

[5]The Commissioner cites to the 2012 edition of 20 C.F.R. (Comm'r Br. 15), but the October 2010 and May 2011 amendments to the regulations are not relevant to the issues presented here, and the 2010 edition of 20 C.F.R. contains the regulations applied by the ALJ in this case. Rules and Regulations, Soc. Sec. Admin. 75 Fed. Reg. 62,676, 62,681, 62,683 (Oct. 13, 2010); Rules and Regulations, Soc. Sec. Admin. 76 Fed. Reg. 24,802, 24,807, 24,811-12 (May 3, 2011).

must consider (1) whether Claimant established a pain-producing
impairment by objective medical evidence; (2) if so, whether there is a
"loose nexus" between the proven impairment and the Claimant's
subjective allegations of pain; and (3) if so, whether, considering all the
evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating symptoms at step three of the framework, the court has recognized a

non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see

also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

the levels of medication and their effectiveness, the extensiveness of the
attempts (medical or nonmedical) to obtain relief, the frequency of medical
contacts, the nature of daily activities, subjective measures of credibility
that are peculiarly within the judgment of the ALJ, the motivation of and
relationship between the claimant and other witnesses, and the consistency
or compatibility of nonmedical testimony with objective medical evidence.

Kepler, 68 F.3d at 391 (quoting Thompson, 987 F.2d at 1489). The Commissioner has

promulgated regulations suggesting relevant factors which overlap and expand upon the

factors stated by the court: Daily activities; location, duration, frequency, and intensity of

symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness,

and side effects of medications taken to relieve symptoms; treatment for symptoms;

measures plaintiff has taken to relieve symptoms; and other factors concerning limitations

or restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii),

416.929(c)(3)(i-vii).

**B.** **Analysis**

As Plaintiff suggests, the ALJ at least implicitly recognized that the first two steps of the <u>Luna</u> framework were met when she found that Plaintiff's "impairments could reasonably be expected to cause some of the alleged symptoms." (R. 17). And, the decision reveals that she made her credibility determination based upon all of the record evidence. (R. 16-20). But, she determined that Plaintiff's allegations regarding limitations resulting from her symptoms "are not credible." (R. 17). In reaching that conclusion, the ALJ found that Plaintiff has a poor work history, that the medical record does not support her allegations of disabling limitations ,<u>id.</u>, that she has a tendency to exaggerate her impairments, that she only occasionally took her prescribed medication, that Plaintiff voluntarily quit, or quit showing up for work, at her jobs as a CNA (R. 19), that she voluntarily limits her activities of daily living more than necessary, and that "more often than not" she reported taking pain medication only "once or twice" a month. (R. 20). Plaintiff does not assert that these findings are erroneous or are not supported by record evidence. Rather, she implies that the facts considered by the ALJ are not "relevant factors" as suggested by the court in <u>Luna</u> and <u>Kepler</u> and are unsanctioned factors which should not be considered in evaluating credibility.

Plaintiff argues that by relying on the fact that the medical record does not support Plaintiff's allegations of disabling limitations, the ALJ adopted the position criticized in <u>Luna</u>. In doing so, Plaintiff misunderstands <u>Luna</u>. In <u>Luna</u>, the court was confronted with the plaintiffs' allegations that the SSA was requiring objective medical evidence demonstrating that pain was of disabling severity. 834 F.2d at 161. The SSA, on the

24

other hand, argued that the decision maker first accepted the subjective allegations of pain as true in order to determine whether they were "reasonably related" to the claimant's impairment, and that if the allegations met this nexus the decision maker would consider all of the evidence, both objective and subjective, to determine whether the claimant's allegations were credible.  Luna, 834 F.2d at 163.  The court summarized Plaintiffs' argument:

> Plaintiffs argue that once a pain-producing impairment has been proven, the Secretary, in primarily relying on objective medical evidence to determine whether an impairment is "reasonably" likely to produce disabling pain, places too great a burden on the claimant to demonstrate a causal relationship between the impairment established and the severity of the pain alleged.

Id. at 163-64.

The court recognized that the question before it was how tight a relation was required between the impairment and the allegation of pain, and it determined that only a loose nexus was required.  Id. at 164.  It explained, "if an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence." Id. (emphases in original).  As the Luna court found, when the first two steps of the framework are met, then all evidence must be considered, and that includes both subjective and objective medical evidence.  See, e.g. Thompson, 987 F.2d at 1488 ("considering all the evidence, both objective and subjective").  The medical evidence is relevant to consideration of whether pain is disabling and, consequently, it was not error

for the ALJ to consider it, <u>along with the other relevant evidence</u>, in determining the credibility of Plaintiff's allegations of disabling pain.

In discussing factors which should be considered in determining the credibility of subjective allegations of disabling pain, the <u>Luna</u> court specifically recognized that the Agency had also noted factors for consideration, and it went on to state that "no such list can be exhaustive." <u>Luna</u>, 834 F.2d at 166. Therefore, the <u>Luna</u> and <u>Kepler</u> list of credibility factors is not a list of "sanctioned" factors which are of greater importance than any other factors in evaluating the credibility of Plaintiff's allegations. Rather, it is a <u>demonstrative</u> list of the types of factors which might be relevant to a credibility determination in a particular case. Plaintiff does not argue that the factors discussed by the ALJ are not relevant to a determination of the credibility of her allegations, she merely implies that they are not as important as is her demonstration of a "proper" analysis of the factors listed in <u>Luna</u> and <u>Kepler</u>.

As the court's discussion makes clear, contrary to Plaintiff's argument, the ALJ applied the correct legal standard in evaluating the credibility of Plaintiff's allegations of pain resulting from her impairments. She determined at steps one and two of the <u>Luna</u> framework that by objective medical evidence Plaintiff established pain-producing impairments of degenerative disc disease, obesity, fibromyalgia, and carpal tunnel syndrome; and that there is a "loose nexus" between those impairments and Plaintiff's subjective allegations of pain. Then, as is required by the third step of the <u>Luna</u> framework, she considered all of the record evidence to determine whether the allegations

are credible.  She stated her reasons for finding Plaintiff's allegations not credible, and those reasons are supported by the record evidence.

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). Plaintiff has not shown a sufficient reason not to defer to the ALJ's credibility determination in this case.  The "analysis of the relevant factors" presented in Plaintiff's Brief merely seeks to have the court reweigh the evidence and substitute its judgment for that of the ALJ, a request which is beyond its authority.  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

The starting point in the court's review is the rationale presented in the Commissioner's decision and not what another party, or even the court, might view as a "proper" weighing of the evidence.  42 U.S.C. § 405(g).  Plaintiff should focus on pointing out the error in the Commissioner's analysis, not on explaining what a "proper" analysis would reveal.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly

conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted).

Plaintiff has shown no error in the ALJ's weighing of the opinion evidence or in her credibility determination. Therefore, Plaintiff's claim that the RFC assessment is not supported by substantial evidence must also fail because it is based only on those arguments.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the Commissioner.

Dated this 8th day of March 2013, at Kansas City, Kansas.

<u>s:/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**